JOEL C. KOURY
Attorney at Law
3435 Ocean Park Blvd., Suite 107-50
Santa Monica, California 90405
Telephone: (424) 248-8670
Facsimile: (866) 829-9412
Email: jckoury@aol.com

Attorney for Defendant
MICHAEL BARZMAN

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL BARZMAN,<br><br>Defendant. | Case No.: CR 23-169-1<br><br>**DEFENDANT MICHAEL BARZMAN'S SENTENCING MEMORANDUM; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: August 18, 2023<br>Time: 10:00 a.m.<br>Department:<br><br>**Before the Honorable Maame Ewusi-Mensah Frimpong** |

TO THE HONORABLE MAAME EWUSI-MENSAH FRIMPONG, UNITED STATES DISTRICT COURT JUDGE, AND ASSISTANT UNITED STATES ATTORNEYS MATTHEW W. O'BRIEN, ALIX MCKENNA, AND MARK A. WILLIAMS:

PLEASE TAKE NOTICE that on the date and time set forth above, or as soon thereafter as counsel may be heard, Defendant Michael Barzman, by and through his attorney of record, Joel C. Koury, hereby files his sentencing position requesting a non-custodial sentence, two years of probation, and two hundred hours of community service.

This motion is based on this notice, the points, and authorities in support thereof, all files and records and the letters of support filed in this case, and any further information as may be presented regarding this motion. Mr. Barzman requests the opportunity to supplement his motion should it become necessary.

DATED: August 5, 2023

Respectfully submitted,

/s/

JOEL C. KOURY
Attorney for Defendant

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. PROCEDURAL HISTORY ..... 4

III. MR. BARZMAN'S HISTORY AND CHARACTERISTICS ..... 4

A. Mr. Barzman's Childhood Was Marked by Frequent Hospitalizations Following a Devastating Diagnosis of Bone Cancer, Which Left Him Handicapped, Socially Isolated, and in a State of Constant Pain. ..... 4

B. The Post Surgery Recover Following Ten Major Surgeries Left Mr. Barzman With A Prescription Drug Addiction When The Relevant Conduct In This Case Occurred. ..... 5

C. Around the Time of the Offense Conduct Started, Mr. Barzman Was Unable to Obtain Health Insurance Due to His Pre-Existing Conditions and Was Financially Desperate. ..... 6

D. Today, Mr. Barzman Has Taken Responsibility for His Fraudulent Actions, Reconnected with His Invaluable Support System, and Has Overcome The Aberrant Circumstances that Contributed to His Initial Participation in the Offense ..... 8

IV. GOALS OF SENTENCING ..... 9

A. A Non-Custodial Sentence Adequately Reflects the Seriousness of the Offense, Promotes Respect for the Law, and Provides Just Punishment for the Offense ..... 9

B. A Non-Custodial Sentence Also Serves the Goal of Deterrence ..... 9

V. CONCLUSION ..... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On May 26, 2023, Michael Barzman pled guilty to one count of making false statements to the FBI (Dkt 24). Mr. Barzman crime was a product of multiple instances of bad judgment following an acute period of financial desperation between 2010-2012, when in fear of losing his health insurance and unable to pay the mountain of medical bills he had accrued while battling cancer, he resorted to making and selling fake paintings. He then compounded his behavior by lying about it to investigators years later.

Mr. Barzman's offense conduct, and the unique set of conditions that contributed to his actions, have their origins in his childhood. Mr. Barzman was diagnosed with Osteosarcoma when he was twelve. He was forced to undergo leg replacement surgery, which involved replacing his right leg with a titanium prosthetic. His teenage body grew at a constant pace, which meant that the prosthetic needed to be surgically replaced repeatedly to keep up with his healthy left leg.

Over the course of the next fifteen years, Mr. Barzman had nine more surgeries to extend the prosthetic resulting in months of arduous and painful physical therapy to teach him how to walk following every surgery. He went from being an active, healthy, twelve-year-old to a handicapped cancer patient forced to endure years of physical agony while grappling with the childhood stigma of being disabled.

While suffering from regular surgeries and lengthy recovery and rehabilitation, medical professionals administered some of the strongest pain killers like morphine and other powerful opiates to help Mr. Barzman manage his pain. His parents encouraged Mr. Barzman to supplement the opiates with marijuana which contributed to developing a substance abuse addiction.

The constant medical appointments, annual revision surgeries, rehabilitation, and pain medication while physically exhausting were also expensive with no end in sight. As a young man, Mr. Barzman began accruing substantial medical debt due to exorbitant

cost of his health insurance, co-pays and out of pocket expenses. Like every cancer patient, Mr. Barzman lived with the constant fear that his cancer would return and kill or disable him. Exacerbating this anxiety was the fear that he would lose health insurance despite paying premium health insurance rates.

For years after the 2006 surgery, and up to the time that Mr. Barzman sold the paintings that are part of the relevant instant offense conduct, Mr. Barzman was unable to obtain affordable health insurance due to his pre-existing conditions.[1] Without access to affordable health care, he was in dire financial straits as his physical condition had already limited his ability to find work and his fear of financial devastation was a daily source of anxiety.

By 2012, Mr. Barzman was desperate to find a way to make enough money to support himself, service his medical debt and keep his health insurance. Mr. Barzman was also struggling with mental health issues and substance abuse, all of which further clouded his judgment. So, he made the decision to participate with J.F. in the creation of fraudulent art. After creating the pieces and selling them out of the trunk of their car, the purchasers convinced Mr. Barzman to supply them with documents establishing fake provenance. At first Mr. Barman complied but when the purchasers wanted more fabricated documentation, Mr. Barzman refused and tried unsuccessfully to put the entire incident behind him. The 2012 art production and sales were an aberrant event that Mr. Barzman never repeated.

When approached by the FBI ten years later, afraid of admitting the truth, Mr. Barzman initially lied to law enforcement. Each one of those poor choices have been exhaustively covered in the media resulting in Mr. Barzman's reputation and character being maligned for the rest of his life.

[1] While President Obama was able to change the law precluding insurance companies from denying coverage based on pre-existing health conditions, that law did not take effect until 2014. And even after the law was signed the Republican party tried over seventy times to revoke or modify that law.

Years before the FBI interview, Mr. Barzman had totally distanced himself from the people that took the artwork and attempted to resell it and exhibit it as authentic. Yet his prior criminal conduct sat dormant like an undiagnosed illness that did not disappear despite Mr. Barzman's regret.

So, he went about stabilizing his life. Through the help of twelve step programs and outpatient therapy, he achieved sobriety from opioids and prescription medication over a decade ago. Still suffering from debilitating bouts of pain, Mr. Barzman, prior to his release on bond, was using marijuana for pain management. He has also voluntarily attended Alcoholics Anonymous meetings to maintain his sobriety and help others suffering from various forms of addiction.

He has learned from his costly mistakes and even helped to deter others from engaging in the same kind of illegal behavior that led to the current investigation. (Presentence Investigation Report, or "PSR," at ¶ 28) In his letter to the Court, Mr. Barzman describes counseling local sellers of fake items at a swap meet about the potential consequences of their behavior.

Mr. Barzman had also been doing community service work by volunteering at Kitchens for Good which he plans on doing as long as he is physically able. Because of his prosthetic leg, he is unable to stand, walk or lift items for more than a few hours at a time. He is also in a healthy, committed relationship with his girlfriend Dr. Arisa Ortiz, Mr. Barzman is finally clear-headed surrounded by a positive support system.

But despite his best efforts, Mr. Barzman's medical issues remain unresolved, his prosthetic has been failing, which will necessitate yet another revision surgery soon. That surgery like the ten prior surgeries will be followed by lengthy rehabilitation which will immobilize Mr. Barzman for a substantial period. This will hinder his ability to walk, stand or work and if required to participate in extensive community service, his already fragile physical health is likely to increase the rate of deterioration in the prosthetic. Mr.

Barzman will need to rely even more on his friends and family for support as he copes with future health concerns.

The defense concurs with the probation department and the government's position that Mr. Barzman be placed on probation without a custody sentence. Mr. Barzman requests that the Court imposes two hundred hours rather than the suggested five hundred hours of community service, considering how difficult and physically painful, it will be for Mr. Barzman to complete that many hours of community service due to his physical limitations.

## II. PROCEDURAL HISTORY

The government filed an Information against Mr. Barzman on April 11, 2023, alleging one count of making false statements, in violation of 18 U.S.C. § 1001(a)(2). (Dkt 1). On the same date, the government filed the parties' Plea Agreement (Dkt 3), and Mr. Barzman later pled guilty to the single count on May 26, 2023 (Dkt 24). His sentencing is currently set for August 18, 2023 (*Id.*).

## III. MR. BARZMAN'S HISTORY AND CHARACTERISTICS

### A. Mr. Barzman's Childhood Was Marked by Frequent Hospitalizations Following a Devastating Diagnosis of Bone Cancer, Which Left Him Handicapped, Socially Isolated, and in a State of Constant Pain.

Mr. Barzman's parents Alan and Pamela divorced when Mr. Barzman was two years old. ("PSR," at ¶ 50). Both parents were excessive drinkers. (PSR at ¶ 52). Alan, who was generally withdrawn and emotionally unavailable with Mr. Barzman, would become increasingly so when he drunk. *Id.* Pamela intermittently attended AA and became angry when drunk. *Id.* Mr. Barzman's exposure to drugs and alcohol began at thirteen years old and when his mother, while well intentioned, gave him marijuana to help increase his appetite and gain weight after particularly difficult medical procedures. (PSR at ¶ 63).

Mr. Barzman fear of financial struggles was ingrained at an early age, witnessing his mother's financially insecurity as she struggled to care for his family as a single

parent. (PSR at ¶ 53). She also struggled with mental health crises, including one particularly depressed two-year period where she was catatonic and confined to her room. *Id.* As a result, Mr. Barzman and his siblings had to rely on their emotionally distant father during these spells to provide financial support and physical care. *Id.*

At the age of twelve, Mr. Barzman observed a tumor growing on his right knee and found that he could not bend his leg. (PSR at ¶ 60). His biopsy confirmed that he had Osteosarcoma, an aggressive bone cancer. *Id.* As a result, he underwent total limb replacement surgery where surgeons replaced his right leg with a titanium prosthetic. *Id.*

Overnight, Mr. Barzman's life changed dramatically. At the time of his initial diagnosis, he had been doing what many if not most twelve-year-old boys take for granted – playing baseball, running, and playing with friends. (PSR at ¶ 57). After his diagnosis and surgery, he suddenly was unable to partake in any athletic activities or even walk normally. As a teenage boy, he was ruthlessly mocked and ostracized by many of his peers as a cancer victim. (PSR at ¶ 54). Although he did have friends who supported him, such as, he embarked on a painful and incredibly lonely journey that lasted throughout his childhood traumatizing him to this day. (see the Letters of Support).

At the age of thirteen, Mr. Barzman underwent intense physical therapy that lasted for eighteen months where he had to learn how to walk again after the amputation and subsequent limb replacement. (PSR at ¶ 60). For the next decade, he experienced annual revision surgeries to lengthen the prosthesis and match his other leg's growth. *Id.* These invasive surgeries occurred regularly from 1992 to 1998 and were always followed by another agonizing period of rehabilitation and therapy. *Id.*

### B. The Post Surgery Recover Following Ten Major Surgeries Left Mr. Barzman With A Prescription Drug Addiction When The Relevant Conduct In This Case Occurred.

Starting in 1991 through 2006, Mr. Barzman was routinely administered powerful doses of pain medication to help his recovery from surgery and during the long rehabilitation. *Id.* He was initially put on a morphine drip in the hospital and remained on opiates as he underwent each surgery in the subsequent years. (PSR at ¶ 63). His early

exposure to his parent's alcohol abuse combined with his mother supplying him with marijuana to help him recover from surgery, led to a belief that substance use was appropriate and acceptable considering his tragic medical history. (PSR at ¶ 52).

The unfortunate side effects of routinely ingesting heavy opioids at such an early age meant that he developed an abnormally high tolerance to pain killers. (PSR at ¶ 63). When Vicodin and Oxycontin failed to deliver pain relief, he eventually turned to black tar heroin which supplemented the prescription Xanax and Valium. *Id.* At the same time, Mr. Barzman self-medicated by drinking and using marijuana several times a day. *Id.*

As Mr. Barzman struggled with his substance abuse addiction, his judgement and self-esteem suffered. (PSR at ¶ 64). His heavy alcohol and opioid consumption also caused him to be impatient and have a short temper, which derailed the healthy relationships in his life and further isolated him from positive influences. *See Id.* This was obviously the darkest period of his life, and it was at that time that he made the decision to create and sell the artwork in this case that led to his conviction in this case. *Id.*

### C. Around the Time of the Offense Conduct Started, Mr. Barzman Was Unable to Obtain Health Insurance Due to His Pre-Existing Conditions and Was Financially Desperate.

In 1999, following the numerous revision surgeries, rehabilitation, doctor visits, Mr. Barzman began accruing substantial medical debt. (PSR at ¶ 61). In 2006, Mr. Barzman underwent another revision surgery to replace his deteriorated prosthetic with a new one. *Id.* He again spent two months recovering at UCLA after the surgery not knowing how often these surgeries would have to be repeated in his lifetime. *Id.*

In 2007, he lost his health insurance and was denied health care for several years after that because of his pre-existing condition. *Id.* It was not until 2012, after the Affordable Care Act was signed into law that he was able to regain health insurance. Because of political compromises essential to enact that law, the Affordable Care Act did not prohibit insurance denials because of a pre-existing condition until 2014 and the cost of his health care during those years was extremely costly. Mr. Barzman also lived in

constant fear that that he would lose his health insurance since the Republican party, with a singular and highly publicized focus, promised to repeal that law's mandatory coverage over seventy times.

When he created the fake art pieces, Mr. Barzman was financially desperate to pay off his mountain of debt, pay for health care and other expenses and continue to receive and pay for his ongoing essential medical insurance and treatment. That is when Mr. Barzman made the decision to create the fraudulent paintings with a friend and sell them from the trunk of their car to purchasers who then attempted to profit by passing the works off as authentic. (PSR at ¶ 27). This mistake spiraled out of his control after the buyers tried to repeatedly bribe Mr. Barzman to provide additional provenance and authentication documents. *Id.*

After creating a situation that he could no longer control and not knowing how to extricate himself from a situation he created, Mr. Barzman hoped that by denying any involvement, he could put the entire situation behind him. So, when confronted by the FBI, he compounded his initial poor judgement by lying and doubled down in subsequent interviews before finally admitting the truth.

Coming to terms and admitting his illegal behavior has been a difficult and painful yet essential journey. With the support of friends, he has begun therapy and treatment with a focus on maintaining and strengthening his sobriety. Because of his actions and the nature of the fraud, Mr. Barzman's behavior has been widely publicized in the media. Broken and embarrassed, Mr. Barzman stands before the court humbly ready to accept the consequences for his actions.

//
//
//
//

    ### D. Today, Mr. Barzman Has Taken Responsibility for His Fraudulent Actions, Reconnected with His Invaluable Support System, and Has Overcome The Aberrant Circumstances that Contributed to His Initial Participation in the Offense

Every time Mr. Barzman turns on the internet, he can find a well-publicized worldwide reminder about the consequence stemming from his dishonest behavior. While he realizes the internet is forever, his hope is that one day the positive things that he is now doing will also be part of his legacy. This conviction has provided a much-needed opportunity for Mr. Barzman to focus on his sobriety, maintaining healthy relationships, and being of service to others who are struggling.

Mr. Barzman, long before learning about this investigation, sought out help and was able to give up prescription and illegal substance abuse. (PSR at ¶ 64). Since being charged, Mr. Barzman has stopped using marijuana and has increased his participation with AA to further strengthen his long-term sobriety.

Mr. Barzman has been lucky to be involved with a loving and supportive partner. (PSR at ¶ 56). His partner is a physician and mother, who has been invaluable in supporting Mr. Barzman as he continues to deal with his ongoing health issues, the instant case and life in general. *Id.* Mr. Barzman, likewise, has been helpful increasing her empathy for her patient as the struggle with their own medical issues.

Mr. Barzman has been volunteering with Kitchens for Good; Ms. Scafidi, the Operations Manager at Kitchens for Good, wrote that Mr. Barzman "is an integral part of the operation… an asset to the team… [and] is working that direction [to change lives] with himself." (See the Letter of Support). Mr. Barzman also has been and will continue to attend AA meetings to maintain his and others sobriety.

In short, the circumstances surrounding Mr. Barzman's decision to initially participate in the instant offense are now all but non-existent. And the consequences of initial lying to the FBI have presented Mr. Barzman with an opportunity for growth and self-improvement.

Mr. Barzman is no longer in danger of losing his health insurance, he has achieved a level of sobriety that he has not had since before his initial cancer diagnosis and he is in therapy to stabilize his mental and emotional health, and has established a stable, loving support network. As one longtime friend commented in their letter to the Court, they will "be there as an even greater support system in the future, ensuring that [Mr. Barzman] remains steadfast in abiding by the law and providing assistance with any medical, emotional, or financial struggles he may encounter."

## IV. GOALS OF SENTENCING

### A. A Non-Custodial Sentence Adequately Reflects the Seriousness of the Offense, Promotes Respect for the Law, and Provides Just Punishment for the Offense

The defense concurs with the Probation Department and the Government that the Court impose a non-custodial sentence. The offense that Mr. Barzman committed was undoubtedly serious, but Mr. Barzman is no longer the same individual that he was at the outset of this scheme and even when he lied to the FBI. As the Government has acknowledged in their moving papers, a custodial sentence is not warranted considering Mr. Barzman's extraordinary and tragic medical history and probation is more than adequate to reflect the seriousness of the crime and promote his future compliance with the law.

### B. A Non-Custodial Sentence Also Serves the Goal of Deterrence

Mr. Barzman is never going to reoffend. The specific factors that gave rise to the initial offense conduct have been absent for years. Additionally, Mr. Barzman now has the advantage of hindsight to ensure that he does not find himself in the same situation as he was in 2012. At the time this offense conduct began, he was financially desperate due to losing his health insurance, drowning in medical debt, blinded by his addiction to drugs and alcohol, and isolated from an accountable support system.

Today, none of things are true. He now has stable health insurance, he is sober and able to think clearly, and he is in a committed relationship with a supportive partner. His network of loved ones extends beyond Ms. Ortiz and encompasses close friends who understand his struggles and will keep him on a sober path. He also finds fulfillment in his volunteer work and is making a difference in his community. While he realizes that the road ahead does not magically become easier, Mr. Barzman has been overcome with remorse from his behavior and terrified at the prospect of going to prison.

The impact of this offense will resonate with Mr. Barzman for the rest of his life. His friends and loved ones have noted repeatedly how ashamed and embarrassed Mr. Barzman is because of his conduct. Because of the felony conviction, his already limited opportunities, will be further reduced. For Mr. Barzman, a non-custodial sentence followed by two years of probation will more than adequately deter Mr. Barzman or anyone else that has a similar history from engaging in this behavior.

The defense is requesting that Mr. Barzman be sentenced to two hundred hours of community service, rather than five hundred hours because of his limited mobility. After a few hours of volunteer work, he routinely must go home and rest for days to recover from the strain of repeatedly walking, standing, and lifting items. Additionally, the added stress on his joints and prosthetics are likely to result in future adverse health consequences.

## V. **CONCLUSION**

For the foregoing reasons, Mr. Barzman respectfully requests that this Court impose a non-custodial sentence, two years of probation and two hundred hours of community service.

DATED: August 5, 2023

Respectfully submitted,

/s/

JOEL C. KOURY
Attorney for Defendant